# Supreme Court of Texas

No. 25-0161

Prabhakar Gopalan,

*Petitioner*,

v.

Andrea Marsh,

*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued March 4, 2026**

JUSTICE DEVINE delivered the opinion of the Court.

In this divorce proceeding, the jury found that the father should have the exclusive right to designate the children's primary residence. But the trial court awarded the mother more time with the children under the divorce decree's possession order. The central issue is whether the court's possession order contravened the jury verdict. We hold that it did. The ordinary meaning of "primary residence" does not encompass a home where the child lives less time than elsewhere, and the statutory context supports that understanding. We therefore

reverse and remand the possession order for the trial court's redetermination. Because that issue may inform the best-interest analysis in assigning parental rights and duties, we likewise reverse and remand those determinations, along with the appellate attorney's fee award. We otherwise affirm.

## I. Background

Andrea Marsh and Prabhakar Gopalan filed for divorce after nine years of marriage. They agreed to joint managing conservatorship of their two children but disputed the allocation of parental rights and division of the marital estate. Following a five-day trial, the jury found that Gopalan should have the exclusive right to designate the children's primary residence within Travis County. The trial court then determined the specific possession terms, child support, and distribution of the remaining parental rights—matters assigned to the court under the Family Code.[1] In the final decree, the court divided the estate, adopted the jury's finding on primary residence, and awarded Marsh greater possession (approximately 57% of the time), monthly child support, the majority of exclusive parental rights, and conditional appellate attorney's fees. After the court issued findings of fact and conclusions of law, Gopalan appealed. Among other issues, he challenges the possession order as contravening the verdict and seeks a remand of possession and related issues.

---

[1] *See* TEX. FAM. CODE §§ 105.002(c)(2), 153.071.

A divided court of appeals affirmed, concluding that the "decree in this case implements the letter of the jury's verdict."[2] Acknowledging a split among the courts of appeals,[3] the court agreed with the Dallas Court of Appeals that "[t]here is simply no requirement in the Family Code that one joint managing conservator be given more time of possession of a child because of any particular jury finding."[4] In so holding, the court adopted the view that the primary-residence right is necessary "for purposes of public school enrollment and as a significant factor in the power of relocation" but awarding "more days" of possession to the other parent does not undermine that right.[5] The dissent would have held that the decree impermissibly conflicts with the verdict because the ordinary meaning of "primary residence" requires that "the children should live there at least half, if not slightly more than half, of the time."[6] We granted review to resolve the split of authority.

---

[2] 706 S.W.3d 650, 659, 667 (Tex. App.—Austin 2025).

[3] *Id.* at 666-67 (citing *In re Z.K.S.*, No. 13-19-00011-CV, 2020 WL 103864, at *4 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, no pet.) (mem. op.); *In re W.B.B.*, No. 05-17-00384-CV, 2018 WL 3434588, at *3 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.); *Albrecht v. Albrecht*, 974 S.W.2d 262, 264-65 (Tex. App.—San Antonio 1998, no pet.)).

[4] *Id.* at 667 (quoting *W.B.B.*, 2018 WL 3434588, at *3).

[5] *Id.* (quoting *W.B.B.*, 2018 WL 3434588, at *3).

[6] *Id.* at 684-85 (Triana, J., concurring and dissenting).

## II. Discussion

### A.

By way of context, we begin with a brief overview of the pertinent statutory history.[7] Before the Family Code's codification, divorce courts were empowered to award child custody[8]—a term that "connotes the right to establish the child's domicile"[9]—and since 1961 have been bound by the jury's custody determinations.[10] At that time, courts disfavored "split custody" and ordinarily granted custody to a single parent.[11]

In 1973, the Legislature enacted Title II of the Family Code, which replaced "custodian" terminology with "conservator" and enumerated parental rights and duties.[12] The statute placed first in

---

[7] *See Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023) ("[N]obody should quarrel with examining how an enacted statute changes over time. . . . [T]his is the history of the legislation, not legislative history. Statutory history concerns *how the law changed*, which can help clarify *what the law means*." (alterations in original) (internal quotation marks and citation omitted)).

[8] *See Lakey v. McCarroll*, 134 S.W.2d 1016, 1020 (Tex. 1940) (noting that the divorce court is authorized to give custody of a minor child to either the father or the mother as the court may deem proper and right).

[9] *Leithold v. Plass*, 413 S.W.2d 698, 700 (Tex. 1967); *see id.* at 702 n.1 (Norvell, J., dissenting) (discussing the distinction between "visitation rights" and "custody rights").

[10] *See In re Y.*, 516 S.W.2d 199, 205 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.); *see also Taft v. Johnson*, 553 S.W.2d 408, 409-10 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.).

[11] *See Leithold*, 413 S.W.2d at 703-04 (Norvell, J., dissenting).

[12] Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, secs. 12.04, 14.01, .02(a), 1973 Tex. Gen. Laws 1411, 1420, 1422-23 (repealed and recodified 1995) (current versions at TEX. FAM. CODE §§ 151.001, 153.131–.133). According to

4

that list "the right to have physical possession of the child and to establish its [sic] legal domicile," thereby linking possession with the authority to determine domicile (now "residence") in a single right.[13] Under this scheme, divorce courts typically appointed a "managing" conservator with that right and a "possessory" conservator with limited possession rights.[14] Then, as now, the child's best interest remained the "primary consideration" for those decisions.[15]

a contemporaneous commentator, the Legislature substituted "conservator" for "custodian" to "encourage the courts and lawyers to disregard prior case law concerning 'custody.'" Eugene L. Smith, *Title 2. Parent and Child*, 5 TEX. TECH L. REV. 389, 424 (1974). But "[t]his gambit was only partially successful." Eugene L. Smith, *Title 2. Parent and Child*, 13 TEX. TECH L. REV. 799, 928 (1982).

[13] The Legislature changed "legal domicile" to "residence" as part of the 1995 recodification and changed "establish" to "designate" in 2003. Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 12.04(1), 1973 Tex. Gen. Laws 1411, 1420, *repealed and recodified by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, §§ 1–2, sec. 151.003(a)(1), 1995 Tex. Gen. Laws 113, 139, 282, *amended by* Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 3, sec. 151.001(a)(1), 2003 Tex. Gen. Laws 2987, 2988 (current version at TEX. FAM. CODE § 151.001(a)(1) ("A parent of a child has . . . the right to have physical possession, to direct the moral and religious training, and to designate the residence of the child[.]")).

[14] Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, secs. 12.04, 14.01(a)–(b), .02(a), .03–.04, 1973 Tex. Gen. Laws 1411, 1420, 1422-24 (repealed and recodified 1995) (current versions, as amended, at TEX. FAM. CODE §§ 151.001, 153.131–.133, .191–.192); *see Phillips v. Beaber*, 995 S.W.2d 655, 660 (Tex. 1999) ("[T]he Family Code presumed that one parent would have a custodial relationship with the child as its sole managing conservator, while the other parent would be named a possessory conservator, exercising specified visitation rights.").

[15] Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 14.07(a), 1973 Tex. Gen. Laws 1411, 1425 (repealed and recodified 1995) (current version, as amended, at TEX. FAM. CODE § 153.002(a)).

Fourteen years later, the Legislature articulated the state's policy to ensure a child's "frequent and continuing contact" with fit parents and to encourage divorced parents "to share in the rights and responsibilities of raising their children."[16] To further that policy, it authorized courts to appoint "joint managing conservators,"[17] defined as "the sharing of the rights, privileges, duties, and powers of a parent by two parties, ordinarily the parents, even if the exclusive power to make certain decisions may be awarded to one party," and with no requirement of equal or nearly equal possession periods.[18] In doing so, courts would specify which rights were to be exercised "jointly" or "exclusively" and would "ordinarily" designate "a primary physical residence."[19] The

[16] Act of May 26, 1987, 70th Leg., R.S., ch. 744, § 6, sec. 14.021(a), 1987 Tex. Gen. Laws 2666, 2668 (repealed and recodified 1995; renumbered 2001) (current version, as amended, at TEX. FAM. CODE § 153.001(a)).

[17] *Id.* sec. 14.021(a)–(b) (current version, as amended, at TEX. FAM. CODE § 153.131). Before that time, "the Family Code did not authorize courts to appoint joint managing conservators unless the parties agreed in writing." *Phillips*, 995 S.W.2d at 659-60; *see* Act of May 18, 1979, 66th Leg., R.S., ch. 313, § 1, sec. 14.06(a), 1979 Tex. Gen. Laws 717, 717 (repealed and recodified 1995) (amending former Section 14.06 to authorize written agreements for the appointment of joint managing conservators) (current version, as amended, at TEX. FAM. CODE § 153.133). The Legislature later entrenched this structure, creating a rebuttable presumption that appointing the parents as joint managing conservators is in the child's best interest. Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 32, sec. 153.131(b), 1995 Tex. Gen. Laws 3888, 3901 (current version, as amended, at TEX. FAM. CODE § 153.131(b)).

[18] Act of May 26, 1987, 70th Leg., R.S., ch. 744, §§ 4–6, secs. 14.01(a)–(b), .02(e), .021(a)–(b), 1987 Tex. Gen. Laws 2666, 2667-68 (repealed and recodified 1995; renumbered 2001) (current versions, as amended, at TEX. FAM. CODE §§ 101.016, 153.134–.135).

[19] *Id.* secs. 14.02(e), .021(b); *see* TEX. FAM. CODE §§ 153.071 (requiring courts to specify the rights and duties to be exercised independently, jointly,

Legislature subsequently adopted possession guidelines that established a presumptive minimum possession period for "a parent named as a joint managing conservator who is not awarded the primary physical residence of the child."[20]

Over time, "[c]onfusion arose . . . over the relationship between binding jury verdicts on custody and court-determined conservatorship terms."[21] As initially enacted, Title II barred courts from issuing decrees that contravened a jury verdict on managing conservatorship, possession, or access.[22] Shortly thereafter, the Legislature altered

and exclusively), .134(b) (authorizing courts to allocate rights "between the parents, independently, jointly, or exclusively," and to establish "a geographic area within which the conservator shall maintain the child's primary residence"). Alternatively, the parents could agree on "the county of residence of the child" or "designate[] the conservator who has the sole legal right to determine the residence of the child" and allocate all the remaining rights, privileges, and duties "between the parents, solely, concurrently, or jointly." Act of May 26, 1987, 70th Leg., R.S., ch. 744, § 6, sec. 14.021(c)(1), (4), 1987 Tex. Gen. Laws 2666, 2668 (repealed and recodified 1995) (current version, as amended, at TEX. FAM. CODE § 153.133(a)(1), (4)).

[20] Act of May 12, 1989, 71st Leg., R.S., ch. 617, § 4, sec. 14.034, 1989 Tex. Gen. Laws 2030, 2035, *renumbered and amended by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 153.137, 1995 Tex. Gen. Laws 113, 150-51, *repealed by* Act of May 29, 2009, 81st Leg., R.S., ch. 1114, § 31, 2009 Tex. Gen. Laws 3056, 3072. The presumption in former section 153.137 was removed in 2009 as its substance was entirely encompassed by a broader presumption enacted as part of the 1995 recodification and still in force today as section 153.252. *See* TEX. FAM. CODE § 153.252 ("[T]here is a rebuttable presumption that the standard possession order . . . (1) provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator; and (2) is in the best interest of the child.").

[21] *Lenz v. Lenz*, 79 S.W.3d 10, 20 (Tex. 2002) (citation omitted).

[22] Act of May 25, 1973, 63d Leg., R.S., ch. 543, § 1, sec. 11.13(b), 1973 Tex. Gen. Laws 1411, 1418 (repealed and recodified 1995) (current version, as

course, empowering courts to set "the specific terms and conditions of access to the child, support of the child, and the rights, privileges, duties, and powers of conservators, on which issues the [jury] verdict, if any, is advisory only."[23]  But this shift prompted concern "that such authority would ultimately thwart the jury's will in determining custody."[24]  In 1997, the Legislature again clarified the statute, specifying the jury issues that a court "may not contravene," including "the determination of the primary residence of the child."[25]

---

amended, at TEX. FAM. CODE § 105.002(c)(1)); *see Y.*, 516 S.W.2d at 205 (holding that the adoption of former section 11.13(b) continued to make the jury's verdict binding on issues of managing conservatorship, possession, and access).

[23] Act of June 2, 1975, 64th Leg., R.S., ch. 476, § 17, sec. 11.13, 1975 Tex. Gen. Laws 1253, 1259 (repealed and recodified 1995) (current version, as amended, at TEX. FAM. CODE § 105.002(c)(2)); *see* Eugene L. Smith, *Title 2. Parent and Child*, 8 TEX. TECH L. REV. 19, 44 (1976) (explaining that if the jury's verdict were binding on all issues of custody "the [jury] charge would be fragmented and overlong, entangling the jury in the details of the proper decree").

[24] *Lenz*, 79 S.W.3d at 20.

[25] Act of May 8, 1997, 75th Leg., R.S., ch. 180, § 1, sec. 105.002(c)(1)(D), (d), 1997 Tex. Gen. Laws 1033, 1034, *amended by* Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 2, sec. 105.002(c)(1)(D), 2003 Tex. Gen. Laws 2987, 2987 (current version, as amended, at TEX. FAM. CODE § 105.002(c)(1)(D)).  The 2003 amendment tracks the current statute in making the "determination" to be "which joint managing conservator has the exclusive right to designate the primary residence of the child."  TEX. FAM. CODE § 105.002(c)(1)(D).

## B.

With this historical context in mind, we turn to the statute's operative language. Section 105.002(c) of the Family Code provides that "[i]n a jury trial":

> (1) a party is entitled to a verdict by the jury and *the court may not contravene a jury verdic*t on the issues of:
>
> > . . .
> >
> > (D) the determination of which joint managing conservator has the exclusive right to designate the *primary residence* of the child;
> >
> > . . . [but]
>
> (2) the court may not submit to the jury questions on the issues of:
>
> > . . .
> >
> > (B) a *specific term or condition of possession* of or access to the child; or
> >
> > (C) any right or duty of a conservator, other than a determination under Subdivision (1)(D), (E), or (F).[26]

The issue here is whether a jury finding on the primary-residence right restricts the court's possession allocation without also improperly determining a specific term or condition of possession. We conclude that it does.

At its core, this question comes down to what "primary residence" means within the statutory context. A statute's meaning presents a

---

[26] TEX. FAM. CODE § 105.002(c) (emphases added). Subdivisions (1)(E) and (F) refer to a geographic restriction on the primary residence designation. *Id.*

9

question of law that we review de novo, applying well-established principles and rules to guide our analysis.[27]  When a statutory term is undefined, as here, we apply its common, ordinary meaning unless this yields an absurd result or a different meaning is apparent from the statutory context.[28]  To ascertain a term's ordinary meaning, we often start by consulting dictionaries.[29]  Dictionaries define (1) "residence" as "the place where one actually lives or has his home as distinguished from his technical domicile,"[30] (2) "primary" as "first in rank or importance,"[31] and (3) "primary residence" as "[t]he place where a

---

[27] *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024).

[28] *Baumgardner v. Brazos River Auth.*, 714 S.W.3d 597, 601 (Tex. 2025).

[29] *Morath v. Lampasas Indep. Sch. Dist.*, 686 S.W.3d 725, 735 (Tex. 2024).

[30] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 1931 (2002); *see* NEW OXFORD AMERICAN DICTIONARY, at 1485 (3d ed. 2010) ("a person's home; the place where someone lives").  As noted, the Legislature changed "legal domicile" to "residence" in 1995, reflecting a shift from an abstract legal concept to a functional factual concept.  *See supra* note 13; *see also Domicile*, GARNER'S DICTIONARY OF LEGAL USAGE, at 293 (3d ed. 2011) ("*Residence* comprehends no more than a fixed abode where one actually lives for the time being" while "*domicile* means the place with which a person has a settled connection for certain legal purposes" (internal quotation marks and citations omitted)).  "[R]esidence" may be an "elastic" concept in different legal contexts.  *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964) ("The term 'residence' . . . is extremely difficult to define."); *see Fortenberry v. Great Divide Ins. Co.*, 664 S.W.3d 807, 812 (Tex. 2023) ("Texas courts have long grappled with residency and venue questions in the context of mobile Texans, and our precedents take a flexible view of what it means to 'reside' somewhere for purposes of establishing proper venue.").  But in this context, there is no dispute where the children will reside—at the homes of both their parents.  The question is which home will be the "*primary* residence" and what that means.

[31] WEBSTER'S THIRD, *supra* note 30, at 1800; *see* NEW OXFORD, *supra* note 30, at 1386 ("of chief importance; principal").

person lives most of the time."[32]   Simply put, a home where the child actually lives less time than elsewhere is not the child's "primary residence" as that phrase is ordinarily understood.

Courts of appeals that have reached a contrary conclusion failed to properly engage with the statute's plain meaning.[33]   Instead, they construed "primary residence" as a legal label designed "to achieve stability" "for purposes of public school enrollment and as a significant factor in the power of relocation."[34]   Neither the plain language nor the statutory context—including "the larger historical sweep" described above or "the surrounding provisions"[35]—supports such a technical and narrow meaning.   Moreover, regardless of their "primary residence," children may generally attend a public school where either parent

---

[32] *Principal residence*, BLACK'S LAW DICTIONARY, at 1568 (12th ed. 2024) ("Also termed *primary residence*; *principal home*.").

[33] *See Puligundla v. Madipuri*, No. 14-23-00743-CV, 2025 WL 1232344, at *3-4 (Tex. App.—Houston [14th Dist.] Apr. 29, 2025, no pet.) (mem. op.); 706 S.W.3d at 666-67; *In re S.H.*, 590 S.W.3d 588, 593 (Tex. App.—El Paso 2019, pet. denied); *W.B.B.*, 2018 WL 3434588, at *3.

[34] *W.B.B.*, 2018 WL 3434588, at *3; *see Puligundla*, 2025 WL 1232344, at *3-4 (adopting *W.B.B.*'s reasoning and concluding that the primary-residence right refers to "the ultimate right to decide the *legally recognized principal home* where the children stay" (emphasis added)); *S.H.*, 590 S.W.3d at 593 ("Regardless of time spent with [the father], [the children's] primary residence remains wherever [the mother] determines it to be.").

[35] *See Brown*, 660 S.W.3d at 754 ("Among the core contextual considerations that generate reliable constructions are the surrounding provisions of a disputed text and how that text arises within the statute's larger historical sweep.").

resides.[36]  The rigorous statutory hurdle for modifying the primary-residence right is also at odds with an interpretation that would confine "primary residence" to a mere legal label for relocation purposes.[37]  To the extent these courts have imposed a different construction on "primary residence" than its ordinary meaning, we disapprove of those opinions.

When a term's ordinary meaning and statutory context both point in the same direction, our fidelity to enacted text compels an end to our interpretative inquiry. We therefore hold that the trial court contravened the jury verdict by awarding greater possession time to Marsh.  The verdict on the primary-residence right does not dictate a "*specific* term or condition" of possession; it imposes a general constraint.  Thus, remand is necessary for the trial court to redetermine the decree's possession order.  Because the possession schedule informs the best-interest analysis for allocating parental rights and duties,

---

[36] *See* TEX. EDUC. CODE § 25.001(b)(1)–(2) (requiring admission into the public schools if "the person and either parent of the person reside in the school district" or "a parent of the person resides in the school district and that parent is a joint managing conservator [or sole managing or possessory conservator]").

[37] *See* TEX. FAM. CODE § 156.102 (requiring that a court deny relief and refuse to schedule a modification hearing within one year of the order unless it determines that facts support an affidavit alleging (1) the child's potential endangerment or significant impairment; (2) the person with the exclusive designation right is seeking or consenting to the modification, which is in the child's best interest; or (3) voluntary relinquishment of primary care and possession by the person with that right for at least six months, with the modification being in the child's best interest).

including child support,[38] we lack confidence that the court's initial determinations were not significantly affected by its erroneous possession order. Under these circumstances, the trial court should have an opportunity to reconsider those issues as well.

Two additional observations deserve mention. First, the plain meaning of "primary residence" in its statutory context does not preclude a possession arrangement of equal periods. The Family Code provides that "[j]oint managing conservatorship does not require the award of *equal* or nearly equal *periods of physical possession* of and access to each of the joint conservators."[39] This provision implies that equal time is permissible; otherwise, the statement that it is not *required* would be surplusage.[40] And in such an arrangement, the children would not be spending more time living elsewhere. That said, there can be only one "primary residence." Accordingly, even when the parent with the primary-residence right has been awarded equal or greater possession time, the order would still contravene the jury verdict

---

[38] *See id.* §§ 153.002(a) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession[.]"), 154.123(b)(4) ("In determining whether application of the [child-support] guidelines would be unjust or inappropriate under the circumstances, the court shall consider evidence of all relevant factors, including . . . the amount of time of possession of and access to a child[.]").

[39] *Id.* § 153.135 (emphases added).

[40] *See In re Tex. Educ. Agency*, 619 S.W.3d 679, 688 (Tex. 2021) (orig. proceeding) ("[W]e endeavor to afford meaning to all of a statute's language so none is rendered surplusage."); *Waak v. Rodriguez*, 603 S.W.3d 103, 108 (Tex. 2020) (recognizing "the cardinal rule of statutory interpretation that every word of text be given meaning").

if the possession periods are structured such that the designated residence would not be "primary" in the sense of "first in rank or importance."

Second, Gopalan repeatedly refers to the joint managing conservator with the exclusive right to designate the primary residence as the "primary parent."[41] We emphatically reject this conflation, which has no textual basis. The significance of the primary-*residence* right, with its concomitant responsibilities, cannot be doubted. But its assignment reflects a best-interest consideration, not a hierarchical ordering of the *parents* in rank or importance. Both parents are encouraged to "share in the rights and duties of raising their child,"[42] and our legal language should reflect this noteworthy public policy. Courts and litigants should avoid injecting into highly charged divorce proceedings shorthand references like "primary parent" that carry contentious value judgments untethered from any legal grounding.

## C.

Gopalan challenges other unrelated portions of the divorce decree involving a bond requirement for international travel with the children, the characterization of Gopalan's interest in the marital residence, and certain findings of facts and conclusions of law. The court of appeals

---

[41] Some lower courts have employed similar nonstatutory terminology. *See, e.g.*, *W.B.B.*, 2018 WL 3434588, at *3 ("It is this power [to designate a primary residence] that makes Father 'primary' as that shorthand term is used, not the number of days he has possession[.]").

[42] TEX. FAM. CODE § 153.001(a)(3); *see id.* § 101.016 (defining "joint managing conservatorship" as "the sharing of the rights and duties of a parent . . . even if the exclusive right to make certain decisions may be awarded to one party").

affirmed the trial court's judgment on these issues.[43]  Our independent review reveals no error requiring reversal, and further discussion would not aid the development of the state's jurisprudence.[44]  Without expressing an opinion on the appellate court's reasoning, we conclude its judgment on those portions of the decree is correct.[45]

## D.

Gopalan's final issue concerns attorney's fees.  Because the court of appeals affirmed, it did not reach this issue.[46]  In the interest of judicial economy, we address it here.[47]

In the divorce decree, the trial court (1) required the parties to bear their own trial-attorney fees, (2) awarded Marsh $80,000 in contingent appellate fees,[48] and (3) accounted for $117,411.02 of Marsh's trial fees as part of the just-and-right division of the marital estate, citing Gopalan's "unnecessary escalation of litigation."  Gopalan does not

---

[43] *See* 706 S.W.3d at 662-63, 672-76, 678-83.

[44] *See Regent Care of S.A., L.P. v. Detrick*, 610 S.W.3d 830, 839 (Tex. 2020) (summarily disposing of an issue when additional discussion would not add to the state's jurisprudence).

[45] *See id.* at 839 n.9 (collecting cases in which we expressed no opinion on the court of appeals' reasoning while acting on its judgment).

[46] 706 S.W.3d at 683.

[47] *See* TEX. R. APP. P. 53.4; *Tabakman v. Tabakman*, 728 S.W.3d 703, 710 (Tex. 2025).

[48] The court awarded appellate fees "conditioned on [Gopalan's] pursuit of appeal."  Gopalan characterizes this award as "contingent upon an unsuccessful appeal," which Marsh does not dispute.  We therefore need not consider the meaning of "conditioned on his pursuit of appeal" or the propriety in this case of awarding fees not conditioned on an unsuccessful appeal.

15

challenge the court's discretion to allocate those fees,[49] but he seeks a remand for redetermination of Marsh's fee award if he succeeds on appeal. We agree remand is warranted as to the appellate fees but not to revisit the property division's treatment of the trial-attorney fees.

The trial court's equitable consideration of excessive fees in dividing the community estate was based on Gopalan's *pretrial* conduct, not on any legal conclusion now found erroneous on appeal.[50] The court's fact findings explain that Gopalan's escalation of pretrial litigation unnecessarily caused both parties to incur substantial fees paid from the community estate.[51] In other words, those fees bore no relation to

---

[49] *See* TEX. FAM. CODE § 106.002; *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981) ("The attorney's fee is but a factor to be considered by the court in making an equitable division of the estate, considering the conditions and needs of the parties and all of the surrounding circumstances." (quoting *Carle v. Carle*, 234 S.W.2d 1002, 1005 (Tex. 1950))).

[50] For this reason, Gopalan's principal authority *Bruni v. Bruni* is inapposite. 924 S.W.2d 366, 367-69 (Tex. 1996). In that post-divorce proceeding, the mother sought recovery of unpaid child support and enforcement of an agreement requiring the father to provide support until the children reached age twenty-one. *Id.* at 367. The trial court determined the agreement was unenforceable, limited recovery to past-due support accruing until the children turned eighteen, and awarded the mother $10,000 in attorney's fees. *Id.* On appeal, the mother contended that the discretionary fee award would likely have been higher had the court correctly determined that the agreement was enforceable. *Id.* at 368. We agreed and remanded for reconsideration, holding that the trial court should reconsider its fee award because its judgment rested on erroneous legal conclusions regarding the enforceability of the agreement. *Id.* at 368-69.

[51] Marsh introduced evidence at trial that her reasonable and necessary trial-attorney fees totaled $267,411.02 while Gopalan's fees and expenses were as high as $824,100.16. Gopalan conceded that he spent roughly $600,000 *more* than Marsh, but he sought to justify only $503,393.69 of that amount. While on the stand, Gopalan also admitted that "we have spent an enormous

16

Gopalan's successful appellate issue regarding the jury verdict. On this record, reversal of the possession order affords no basis to disturb the property division.

The appellate-fee award requires a different analysis. Because Gopalan has prevailed in part on appeal, Marsh may not be entitled to the full award.[52] But she may recover fees incurred in addressing his unmeritorious issues.[53] Marsh's evidence does not identify the appellate fees that would be incurred on those issues, so remand is necessary to determine that amount.[54]

---

amount of money on this case" and took "responsibility for it." The jury found that $267,411.02 and $503,393.69 constituted reasonable and necessary trial fees for Marsh and Gopalan, respectively.

[52] *See Ventling v. Johnson*, 466 S.W.3d 143, 156 (Tex. 2015) ("An award of conditional appellate attorney's fees to a party is essentially an award of fees that have not yet been incurred and that the party is not entitled to recover unless and until the appeal is resolved in that party's favor.").

[53] *See Pioneer Emerald Pointe, LLC v. Texmenian Contractors, LLC*, No. 05-22-00493-CV, 2023 WL 3963991, at *12 (Tex. App.—Dallas June 13, 2023, no pet.) (mem. op.) ("If an appellant is partially successful, the appellee may recover fees only for work performed on the issues where the appellant was unsuccessful.").

[54] *See, e.g.*, *Phillips v. Rob Roy Homeowners Ass'n*, No. 03-21-00543-CV, 2023 WL 2817342, at *7 (Tex. App.—Austin Apr. 7, 2023, pet. denied) (mem. op.) (remanding the conditional appellate-fee award for the district court to determine the amount to be awarded the appellee given the appellant's partial success on appeal); *Taylor Morrison of Tex., Inc. v. Fulcher*, No. 13-20-00332-CV, 2022 WL 3092553, at *7 (Tex. App.—Corpus Christi–Edinburg Aug. 4, 2022, no pet.) (mem. op.) (same); *cf. Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (noting that remand is required to determine what portion of attorney's fees is recoverable when at least some fees are attributable only to claims for which they are not recoverable).

### III. Conclusion

For these reasons, we reverse the divorce decree's allocation of possession, child support, and parental rights and duties between Marsh and Gopalan. We remand those issues along with the award of appellate attorney's fees for redetermination consistent with our opinion. We otherwise affirm the court of appeals' judgment. Our judgment is without prejudice to either party seeking modification of the exclusive right to designate the primary residence of a child under any relevant authority.

John P. Devine
Justice

**OPINION DELIVERED:** May 22, 2026